The next case is 4-13-0788, People's State of Illinois v. Michael Cattron. Attorney McNeil is here on behalf of the appellant, and Attorney Wilson is here on behalf of the appellee. Mr. McNeil, you may proceed. Attorney McNeil May it please the Court, Counsel. The facts of this case are pretty straightforward. Defendants were under arrest at that time. Police officers went to Ms. Curry's house, obtained her consent to search her whole home for guns and drugs. This would have been the second search that day. However, defendants weren't present as they were under arrest. Officer Kintner testified he was of the understanding that Ms. Curry had children with both of these defendants and that they were staying overnight at Curry's house. It's unclear how long of a stay it was or how frequently they stayed overnight. However, it was Kintner's understanding that they were staying overnight at her house. Police obtained Curry's consent in the living room, went over the forms and signed the consent forms in the living room, started their search there as well. In the living room they came across laundry bags on the floor. Curry pointed out that these were defendants' laundry bags. There were also laundry bags in the closet, the adjacent closet to the living room. However, that door was not locked to the closet and in fact there is testimony that the door was open. So these laundry bags were in the living room in the adjacent closet. They were closed with drawstrings cinched tightly enough or just tightly enough to make sure clothes didn't come out over the top. Curry did inform the police that they were defendants' laundry bags and inside one of the laundry bags, inside one of defendant Katrone's shorts, they found a handgun. Counsel, you mentioned that Curry informed them that the laundry bags belonged to the gentleman who had been visiting her home. What, if anything, do you believe was the obligation of the police to do at that point? Well, at that point presumably they also told Ms. Curry that the defendants were under arrest. I think the logical flow of that conversation would be to point out, well, these are their bags. These are not mine. There are many reasons to do that. Fernandez v. California, a very recent Supreme Court case. Well, she did that. She told them the bags belonged to the gentleman. So my question to you is what should the police have done instead of just going ahead and searching the bags? What is your position as to what they should have done at that point? Well, I think they had the reasonable belief that she would have access to these bags. They were in her living room. It's her house. As far as the police understood, these defendants did not live there. This was a common area. I would argue that the living room is the most common room of any house. It's usually vetted in my reply brief because it's only a few months old, maybe one month old. Fernandez basically, the language states, it would be unreasonable and indeed absurd to require police officers to obtain a warrant when the sole owner or occupant of a house voluntarily consents to a search. The owner of a home has a right to allow others to enter and examine the premises. There's no reason why the owner should not be permitted to extend the same privilege to police officers if that is the owner's choice. Again, Fernandez is applicable to here because of the prior arrest of the defendant in both cases. Fernandez consented after her boyfriend, I think, was under arrest for domestic abuse. Was this the one with the closet? No, that was Burton. What are the facts in Fernandez as far as the item that was searched and its location and its condition in terms of was it closed? Well, I think it was a sawed off shotgun that they found. I don't know if it was in a, I can't remember if it was in a closet or not. I will check and specify on my rebuttal where the exact location was of that. Does it involve an overnight guest? It involves at least someone who was not a resident at the apartment. One of the errors I think the trial court made here is basically giving the overnight guest more of an expectation of privacy than a cohabitant, a spouse, a roommate, something like that. When in reality that, obviously someone who lives in the house would have a greater expectation of privacy than an overnight guest. Is there any significance here to the fact that it was a laundry bag as opposed to a suitcase? Well, I think that would go towards the apparent authority, the reasonable belief of the officers to assume that she had authority to consent to the search of these bags because, again, they were in a common room. It wasn't a situation where they were folded up in a closet or even stored in a bedroom closet or something, a place where someone would commonly sleep if they were an overnight guest. They were in the common area living room in the adjacent closet. And Fernandez didn't involve a suitcase or a bag? Again, I don't think it involved a closed container. However, the principles that Fernandez stands for, they give the reasons why an occupant of a house would want to consent to this. And they're applicable here. They say that the lawful occupant of a house or apartment should have the right to invite the police into the dwelling and conduct a search. Any other rule would trample on the rights of the occupant who is willing to consent. And such an occupant may want the police to search in order to dispel suspicion raised by sharing quarters with the criminal. And in Fernandez in particular, the occupant may want to conduct a thorough search so that any dangerous contraband can be found and removed. In that case, it was a sawed-off shotgun. There was a four-year-old in the apartment. Okay, but here, I mean, there's no question that the resident of the apartment gave consent to search. And I don't think the defendant here is saying that that was improper, that the police couldn't search in the apartment. And so isn't that then, putting aside that this case involves a laundry bag, let's say the defendant's gun was found on a coffee table. Is that then the fact situation that we have in Fernandez? Would that be an apples-to-apples comparison? Whereas here, it's the further search within a closed container that has been identified as being the defendant's property without consent to search that property. Again, I think that the Fernandez principles show that a homeowner shouldn't be held hostage in their own home, even if you want to deem it a closed container. If someone brings a suitcase into your house, unknowingly to the homeowner that has dangerous contraband or illegal contraband inside of it, that person subsequently arrested, the police come to the house, inform the homeowner. I mean, I know my initial reaction would be like, hey, this is his stuff. I'm not taking responsibility for this. Please take any dangerous or incriminating material out. You're the authorities. You're in the best position to discover this dangerous or incriminating material. I don't want any responsibility for it. And moreover, I don't want any dangerous things, especially in a house with children. There was an indication here that she had children with both defendants, so presumably there were children in the house. The gun was found in an unlocked, barely closed laundry bag on the floor of either an adjacent closet, an open adjacent closet, or the living room. It's not hard to think of a troubling situation that might happen with a young child in that house. So, counsel, I just want to be sure. So you're saying that an overnight guest does not have a reasonable expectation of privacy, that they're just at the mercy of the homeowner? They would have a reasonable expectation of privacy. However, the homeowner's privacy to live in a house free from incriminating or dangerous contraband is much stronger than an absent defendant's reasonable expectation of privacy, especially in the circumstances of this case, where the, if you want to call them closed containers, were in a common area and barely closed at all. But, of course, the trial court's holding wasn't that the homeowner just had to continue to live in the home with a gun in there, a dangerous item in the home. The trial court saw the problem as that a warrant wasn't sought. So our two choices aren't either, you know, no privacy for the overnight guest or the homeowner has to live with potentially dangerous items in their home. Those aren't our only choices, right? Fernandez also tackled that issue. Well, you could have also had an apparent consent to search if the homeowner or the resident here had said, yeah, search that laundry bag. But here she didn't. She said, hey, those are the defendant's bags. What she said certainly wasn't any sort of implied consent or conveying her consent for them to search. So you didn't have that. I think the logical conversation probably was informing Ms. Curry of the defendant's arrest and then her saying, oh, whoa, okay. They were in the same room. These are their laundry bags right here. She didn't say, she didn't, there's no indication in the record that she didn't have access to these. There was no indication she had access either, right? Well, I mean, unless you count the, she was present for the whole search. She didn't say anything like, they left these for me, I'm getting ready to do their laundry or I've started doing their laundry, nothing like that? There was no definitive statement like that on the record. It was one policeman's understanding that they were there to do laundry. I think that's a reasonable inference for the policeman to make. And is this the officer who, when being questioned, indicated that there was nothing in the report indicating that she was doing laundry or that they had given her any access? There was nothing in the report that indicated that. The other police officer did not have that recollection, is that correct? He didn't testify to it, no. However, I would argue that that was a reasonable inference to make when these bags full of dirty laundry are on the living room floor. You know, what you're saying and the concern that you're expressing for the resident has some appeal and seems logical. That if you have the resident that has some concerns about whatever might be in this bag, that she shouldn't be prevented from having the police being able to take a look at it. But if she had just simply said, yeah, you know, look in there and see what you can find. Or, you know, I don't know what's in there, but I think you ought to look. You might have an apparent consent then, because then the police perhaps believe that she has the authority to allow that. I would say that that was the implied message in even pointing out that the bags were the defendant's. Well, let's back up, counsel, because when we talk about the search, it's not a situation where she brings the police into the room and says, these are their bags. It's a situation where they're starting to go through the house and they get to those bags and then she volunteers, those are their bags. Isn't that more accurate? Yes, from the brief testimony, yes. Again, the trial court's decision applying it in the future is basically, what if it's a wardrobe or something that can't be seized and removed from the house? A wardrobe that has the defendant's stuff in a bedroom. It can't be seized right then. The Fernandez court makes it clear that a warrantless search is reasonable and consistent with the Fourth Amendment consent search. It's reasonable and consistent with the Fourth Amendment, irrespective of the availability of a warrant. In other words, the warrant option here very well could have been done. I don't know the probable cause requirement. I'm not definitively sure if that was met to establish the warrant. However, it's unrelated anyway. Because of the validity of the consent here, Fernandez makes it clear that the validity of the consent, if it's reasonable, it's consistent with the Fourth Amendment, irrespective of any availability of a warrant. Again, Fernandez's case is so important because it looks at it from the position of the homeowner in situations such as this. What would the alternative be here if there was no probable cause? The laundry bag stay in the house? The rights of the homeowner are trampled in that situation. Olson, another Supreme Court case, does talk about overnight guests. The principle, they say, is from the overnight guest perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where his possessions will not be disturbed by anyone but his host and those his host allows inside. Of course, here, the host, Ms. Curry, allowed the police inside. The defendant's possessions in this case, obviously, would be in the laundry bag. And that is a valid consent, especially when you apply the principles that Fernandez espouses. Counsel, let's back up because I've had a chance to look at your reply brief on Fernandez. And Fernandez involved cohabitating a boyfriend and a girlfriend who were living together, correct? Yes. So that's different than what we have here. We're not talking about an overnight guest. So, I mean, overnight guests wouldn't have more expectations of privacy. Just follow me. And so, also, she had given her consent and then he objected prior to being removed from the apartment and said that that withdrawal, that his objection, invalidated her consent, right? No. That's what you have in your brief. Oh, yeah. But then they came back an hour later, she consented, and they searched. You have the defendant argue that his girlfriend's consent was not sufficient when the police arrested the defendant and were, therefore, responsible for his absence from the premises and his objection to a search prior to his removal from the apartment invalidating his girlfriend's consent. So maybe it was that. That's what the defendant argued. Right. Okay. And then the court held that an occupant's consent to search is valid even when a co-occupant previously objected but was no longer present. Here, there was no previous objection even. But there was no co-occupant either. Right. Again, I don't know why the court and defendant argue that, for some reason, an overnight guest would have more privacy rights than a co-occupant. That's absurd. Of course, a roommate or a spouse or even a child in their mother's and father's house, they live there. Of course, they're going to have more of an expectation of privacy than an overnight guest, at least equal privacy expectations. So even applying the cohabitant actual common authority doctrine here, saying, okay, let's just say they're equal to a cohabitant, Fernandez makes it clear that the sole owner of a house doesn't need to have to live with dangerous or incriminating contraband in their house. But when you look at the line of cases involving cohabitants, the logic seems to be, if we're sharing this home and we have authority over this home, then even if you're gone, because we share this home and the space within it and the items within it, that I can consent just as you can, versus an overnight guest, when I bring in my suitcase with my stuff, I am not consenting to sharing these items with you. We don't have equal control over these items. Isn't that a difference? That is a difference. But the sole owner of a house, you have to take into account, just as in Fernandez, the fact that these defendants were arrested. I mean, if there's a suspicion by the homeowner that there might be some contraband in the house, then they should have the right to consent to a search and get it removed by the authorities. Fernandez stands for that principle. So the law is not that when you determine that a person may not have authority to consent to the search of a specific item, the law is not that the police have to make further inquiry to determine if you have apparent authority or actual authority to consent? In a vacuum, yes, that would be best. Of course, all Fourth Amendment analysis is done by reasonableness. And here, the totality of the circumstances show it was... So, I mean, if Curry said nothing, and they just searched the laundry bags, she would have been in a better position than to point out that they were defendants' laundry bags? If she would have said nothing, then this would have been a valid search, because they wouldn't have known that they were defendants' bags at all. However, she went ahead and volunteered, hey, the guys who got arrested, this is their stuff. They might have something in here. I don't want it in my house. That should be a valid consent to get that stuff removed out of the house. But she didn't say that, what you just said, did she? She said that these are the defendants' bags. I don't know why else... She said, I don't know what they have in here. I don't want it in my house. I don't know what other logical reason there would be to point it out. Did she say that, what you just said? There was no denial, but on the record, there's nothing that says she did say that. However, again, I wouldn't know a logical reason to point it out if that wasn't the reason, especially to the police. Okay, thank you, counsel. Thanks. Mr. Wilson? May it please the Court? Counsel? I'm Ryan Wilson with the Office of the State Appellate Defender for the Defendant Appellees Carrie Faulkner and Michael Catrone. What we know in this case is what the factual findings were. And great deference is given to those factual findings. The record is somewhat sparse because the officers didn't ask many questions here. What we know is that the court found that these bags were closed containers, that they were in Jasmine Curry's residence, that Ms. Curry told the officers that the bags were not hers but belonged to the defendants, and that the officers asked no questions other than that. The record is a little inconsistent regarding whether she volunteered the fact that the bags were the defendants or if the police asked her that. I believe the officers testify somewhat inconsistently on that point. In looking at the findings of fact, we can parse out some of the State's arguments here. As Justice Holder-White, you commented, she didn't say anything beyond those bags are the defendants. And in its reply brief, the State points out, I think largely because of Fernandez, that, well, maybe she didn't want contraband in her home. Well, the record doesn't say that. That is pure speculation. We don't know why she told the police that those were the defendants' bags, other than it's possible that the police asked her some questions. But Fernandez absolutely does not apply and is not finding precedent as far as this case goes. In Fernandez, the defendant runs into his girlfriend's apartment after there's been a robbery, and the police in hot pursuit knock on the door. She comes out. She's bloodied. She has a bump on her head. She's carrying a young child. She says that they can come in. The defendant quickly approaches the doorway, I believe in one of these boxer shorts, and says, oh, no, you can't come in. He's arrested. An hour or two later, the police go back and ask if they can come into the apartment. She allowed the owner, homeowner, renter allows them access. And when the police go in, they find numerous items of contraband, including a sawed-off shotgun that the young child of the property owner leads the police to. So these appear to be items that are just kind of strewn throughout the apartment. The record does not say where they were. I would venture to guess that if they were in a bag or in a closed container, the record may very well say that. But based on the plain language of Fernandez, it certainly appears that he ran in there, took off his clothes, threw his stuff, you know, wherever he threw it, and went right back to the door to object to the consent. So Fernandez is not a case involving a closed container. That is very important because, Justice Holderwise, as you pointed out, the Illinois court has been consistent regarding their law with guests in closed containers. Both in Bohl and Matlock, which are cited in the briefs, and I'm quoting here from Bohl, the court says, When a homeowner permits entry into a home of a guest's private container to which the owner does not have a right of access, the homeowner effectively surrenders a segment of the privacy of her home to the privacy of the container's owner. Such a homeowner lacks the power to give effective consent to a search of a closed container. Did she have the right to access those bags? It doesn't appear so from the record. There's absolutely no indication that she had any right of access to those bags. And that's what's in here. Well, they left them in the living room, and they weren't locked, right? Well, they were drawn closed. I would say, though, this is a problem that we've all, well, not a problem, this is a circumstance that we've all encountered at some point. Women carry purses, men carry bags, backpacks, whatever, into someone else's residence. Those items are entitled to Fourth Amendment protection as you're walking down the sidewalk to the residence. They don't lose that protection once you cross the threshold. Like that quote from Bohl that I just read, you maintain that level of privacy in whatever that article is that you brought into that residence. We don't know how long the bags had been there. Perhaps the defendants left them there immediately before they were arrested earlier on the morning of April 12th. What we do know is that there's absolutely no indication in the record, and it's a factual finding by the Circuit Court, that Jasmine Curry had the authority to allow the police access to these bags. And the right of access, again, is very important. This isn't a case, and let me back up for a minute. Most common authority cases deal with cohabitation, deal with families, things of that nature. That doesn't exist in this case. So really, it's an odd case to try and apply the common authority doctrine. But where you have this as a guest going into someone's home, like a purse in a friend's residence, when you take it in there and put it down, you still have a right to privacy in that purse. Absent there being some indication in this record, which there isn't, that Ms. Curry had the ability to access those bags, there's no right for her to convey authority to the police to search those bags. It's not like a case, Bell, I believe, was cited in the briefs, where, pardon me, Frazier v. Cupp, cited in the briefs where the defendant gave permission to his cousin to access a pocket in a duffel bag. Once the defendant gave his cousin that permission, the cousin then had the right of access to that bag. And he could extend that right of access to another party if he chose, just as the original owner of the bag could have done. So when the police show up at the door and say, we'd like to search this duffel bag, the court said, yeah, the cousin can give the police authority to do that, because the owner of the bag vested that authority with the cousin. We don't have that here. We don't have any indication, either from a common authority standpoint, or from an apparent authority standpoint, that the police... You're saying from an actual authority standpoint versus an apparent authority standpoint. Correct. So, I mean, is there enough from the record to discern an apparent authority here? No, there's not. For two reasons. One, she told the officers prior to the search, regardless of whether they asked her or she just volunteered it, that they weren't her bags. So the officers were on notice that she didn't have the ability, or at least the only evidence that they had was that she didn't have the ability to consent, and they didn't ask any further questions. And that's kind of what their burden is. If there's any question regarding someone's ability to consent, they need to ask further questions to determine whether there is that authority there. These bags, it might be a different question if Ms. Curry gave the officers the authority to search for residents, and they went up to the bedroom, and the bags were laying on a bed there. And they opened up the bags, and they searched through the bags. Let's say she said, my bedroom's at the top of the stairs. Feel free to go in there and search the bags. That isn't the case here. She told these officers that the bags weren't hers. The second reason why apparent authority really doesn't exist in this case is if you look at the present that the state's relying on, which is the Burton case. And that is your prototypical apparent authority case. In Burton, the defendant lived with his girlfriend for seven years. She was the lease, the signed lessee on the lease. Police arrived at that residence and wanted to search it. She gave written and oral consent to allow the police to search it. Her boyfriend, the defendant, was sitting right there, and the police said, will you sign this consent? He said, no, I won't sign the consent. But he didn't object to the search. They went upstairs to a closet. Is this the case where he went on to say, you don't need my consent? Correct. Yeah. He told them, you don't need my consent, because she's already consent. She's already signed the consent form. The police go up to a bedroom, open up a closet that's jointly shared by the defendant and his girlfriend, and there's a coat hanging there. There's no indication that the coat is his or hers. It's a men's coat, but there's no indication that she doesn't have the authority to wear the coat or that the coat isn't actually hers. The police search it to find contraband there. In that case, the court said, well, we've got this ongoing relationship between the parties. We have a commonly shared closet where there's a coat in there, and there's nothing, you know, no identifying feature of the coat that shows that it is the defendant's or it's the girlfriend's. The defendant didn't object to the search, so the officers had no reason to doubt that she would have the apparent authority to consent to the search. The fact that Ms. Curry told the officers, no, those bags aren't mine, they're Mr. Katron's and Mr. Faulkner's, makes the apparent authority argument impossible for the state to win, because the officers were put on notice that these bags are not hers. And absent some other inquiry where they ask, you know, further questions to establish that there is some showing of apparent authority, they can't just launch it and search the bags. I know the state has said, well, what else are the police to do? You know, what if it is a piece of furniture or something like that? Well, one, that's not the case that we're presented with here. We have some bags. They could have taken the bags. They knew where the defendants were. The defendants were in police custody. They could have asked the defendants to consent, and if the defendants wouldn't consent, they could have sought a warrant to search the bags. They didn't do that. And that's where the problem lies for the state in this case, because the record is so sparse. The police just launched into a search of these bags without asking any further questions. And with the other options still being available to them, and no indication that Ms. Curry said, please search it, I think there might be guns in there or something. That was not said. There's no, I believe either the state in the circuit court or the defense preemptively in the circuit court addressed exigent circumstances. That argument hasn't been made here on appeal. So, you know, really, any sort of inference that, well, she must have said, no, those bags aren't mine because she wanted the police to search them, it's nonexistent here in the record and can't be considered for the purposes of this case. The trial court's statement in denying, excuse me, in granting the motion to suppress, I'm wondering if this is an inference that's subject to the manifest weight standard here. He states, they began searching the closed containers within the premises of the consentor without any indication that the consentor had any authority to give that consent. Is that an inference that's being drawn by the trial court that's subject to the manifest weight standard here? I believe it's a factual finding. Yeah, it's a factual finding based on the testimony that he heard. The suppression hearing was really in two parts. They had the initial evidence regarding where Officer Kettner and Officer Harch weren't testified. The state never called Ms. Curry to ask her further questions about the search. That potentially could have helped their case. They didn't do that. But once the testimony was completed, the state moved for a directed verdict. And the court said, essentially, no way. There's nowhere near enough evidence here for a directed verdict. And then the state asked for continuance so that they could question Officer Stark regarding his recollection of what happened during the search. The only thing that Officer Stark was able to add to the dialogue was that there was no furniture in the living room of the residence. And it was at that point, then, that the court said, based on my earlier statements of the evidence I heard prior to this, there's no evidence that she gave them any indication that she had a right of access to these bags. So because that is a finding based on the balance of the evidence that the circuit court heard, yes, absolutely, I think the manifest way gets extended to that finding as well. The state cites the Olson case in their refinery. And Olson is factually distinguishable from this case in the sense that Olson dealt with an individual standing to contest an arrest of a resident. The police came in and arrested him without a search warrant or without an arrest warrant and without permission of the homeowner. And he was arguing that he had a privacy interest as an overnight guest in staying at that residence. And the court ultimately found that he did have standing. But the court went on to say other things. And the point that the state makes in citing Olson is, if someone is staying at a residence, there's nothing saying that their possessions might be disturbed by other people that are staying there at the residence. Well, the question isn't who's going to disturb the possessions, but the question is who has a right to access to the possessions, who has permission to get in and search it, grab things out of the bags, things of that nature. And we don't have that here in this case. There is, again, absolutely no evidence that she had the authority to enter into these bags. If the police walked... Well, we know from the record that when the police entered the residence, they went into a closet and started handing bags out. The mere fact that they were disturbing those bags, that they were carrying them from the closet to the living room, doesn't mean that they then have the right of authority to get into those bags. Just as in Olson, if someone who is staying at another person's residence, if the person who owns the residence moves a bag, doesn't mean that they have the right of access to the bag. So Olson really is a non-factor in this case as well. Again, this case depends on the factual findings made by the circuit court, and maybe more so on the factual findings that weren't reached, because the record simply wasn't developed here. We know that the court found that these were closed containers. Closed containers have occupied a special place in search and seizure law for decades. We know that there's no evidence that she said anything else to the police regarding the bags, other than, those aren't mine, those are the defendant's. The state comments that, well, she didn't say, please search it, she didn't say no, don't search it, she didn't really say anything. Well, you better remember this is the state's burden, to show that they're the appellant. They have the burden of showing that the motion to suppress was improperly granted here. And based on this record, they simply can't do that. You also can't take speculation and inferences as lending themselves to meet the state's burden. The speculation regarding why she did or didn't say anything is really irrelevant, because the disposition of this case is governed by what, in fact, is in the record. And what we know from the record is that she said they were the defendant's bags, she never claimed ownership of them. I know the state mentioned that Officer Kentner said something about Ms. Curry commenting that the bags were there for her to do the laundry. Kentner himself admitted that he wasn't involved in that conversation. There was a conversation between Ms. Curry and Detective Hartshorne, or Officer Hartshorne, and when Officer Hartshorne was questioned, she not only said that she had no recollection of Ms. Curry saying anything about doing the laundry, but the state had also tendered an audio recording of Detective or Officer Hartshorne's interview with Ms. Curry. And the defense went to play that audio tape, and the state stipulated that there was no evidence in the audio tape of any mention of doing any laundry. So at that point, they kind of gave up on the laundry aspect of the case, again, with Detective Kentner, Officer Kentner, even admitting that he wasn't part of that conversation, that may or may not have been said. That really doesn't hold any weight, again, when it comes to the disposition of this case, given Detective Hartshorne's or Officer Hartshorne's testimony. I have nothing further if this Court has no further questions. Thank you, Counsel. I would ask that the motion be dismissed. Mr. McNeil, do you have a rebuttal? As for the apparent authority argument here, the defendant cited People v. Bull and used language from that. It should be noted that in that case, the Supreme Court of Illinois found that there was apparent authority for the homeowner to consent to that search. From a policy standpoint here, the trial court's decision would basically encourage any defendants to not only drop off contraband at a third party's house, but to inform them as little as possible of the contraband in any container they so wish. Apparently, their privacy rights would be greater than that of the homeowner's consent to search these bags. So, again, from a policy standpoint, which is I think why Fernandez was decided the way it was, the trial court's decision in this case would lead to an absurd result. Basically, as I emphasized earlier, placing these absent defendants' expectation of privacy rights and laundry bags above the rights of that homeowner to live in a house free of dangerous and incriminating contraband, which is, again, why Fernandez is cited so heavily in my reply brief. As for Burton, that was the case where in the closet was the men's coat, the girlfriend gave consent to search the house, the police went into this men's coat. Again, the apparent authority of that case is equivalent to this case. It was not a women's coat, it was a man's coat, closed container at least, as closed as the items here. In fact, it was in the closet, so you could argue that it was even more of an expectation of privacy. And then the trial court, or the appellate court, the second district in Burton, found that there was still apparent authority in that case. So I would ask this court to apply Burton, and most importantly, apply Fernandez, and there's both common authority, actual authority, and apparent authority. The trial court erred in granting the motion. Thank you, counsel. All right, we'll take this matter under advisement and be in recess until the next case.